IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAVIN SIEGFRIED, individually, and on behalf of all other similarly situated consumers,

    Plaintiff

   v.

ROMAN HEALTH VENTURES INC.,

    Defendant

: CIVIL ACTION NO. 1:23-CV-215

: (Judge Conner)

:

:

:

:

:

**DEFENDANT
ROMAN HEALTH VENTURES INC.'S BRIEF
<u>IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     FACTUAL BACKGROUND........................................................3

III.    LEGAL STANDARD ................................................................6

IV.     ARGUMENT..............................................................................7

    A.      The FAA Applies to the Arbitration Agreement. ................8

    B.      Any Dispute Regarding Arbitrability is Delegated to the
        Arbitrator. ...........................................................................9

    C.      The Arbitration Agreement Should Be Enforced Under the
        FAA. ..................................................................................12

        1.      The Arbitration Agreement is Valid and Enforceable.............14

        2.      Plaintiff's FWA and WESCA Claims Are Within the
            Scope of the Arbitration Agreement. ......................................17

    D.      The Arbitration Should Proceed on an Individual Basis...................19

    E.      This Action Should Be Stayed in Favor of Arbitration. ....................20

V.      CONCLUSION..........................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*3850 & 3860 Colonial Blvd., LLC v. Griffin*,
   2015 WL 894928 (Del. Ch. Feb. 26, 2015) ...........................................................8

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ...............................................................................................8

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*,
   618 F.3d 277 (3d Cir. 2010) ................................................................................14

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .............................................................................................12

*AT&T Techs., Inc. v. Comm. Workers of Am.*,
   475 U.S. 643 (1986) .............................................................................................13

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) .......................................................................................8, 13

*Cabela's LLC v. Wellman*,
   2018 WL 5309954 (Del. Ch. Oct. 26, 2018) .......................................................15

*Carlson v. Hallinan*,
   925 A.2d 506 (Del. Ch. 2006) ............................................................................14

*Carrera Chapple v. Ancestry.com Operations Inc.*,
   2020 WL 5847552 (S.D. Cal. Sept. 30, 2020).....................................................20

*Commc'ns Workers of Am., AFL-CIO, Dist. 2-13 v. Verizon Pennsylvania, LLC*,
   No. CV 17-1869, 2017 WL 3485879 (E.D. Pa. Aug. 15, 2017) .......................17

*Coulter v. Experian Info. Sols., Inc.*,
   No. CV 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ...........................19

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................................8, 13

*Defillipis v. Dell Fin. Servs.*,
   2016 WL 394003 (M.D. Pa. Jan. 29, 2016)......................................................8, 15

*Delaware River Waterfront Corp. v. Wellspring Software, Inc.*,
   2022 WL 7869139 (E.D. Pa. Dec. 22, 2022).........................................................7

# TABLE OF AUTHORITIES

**Page**

*Dimattei v. Diskin Motors, Inc.*,
  No. CV 16-5183, 2017 WL 1283943 (E.D. Pa. Apr. 6, 2017) ............................6

*Dobbs v. Health IQ Ins. Servs., Inc.*,
  No. CV 21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022) ........................15

*Doe v. Massage Envy Franchising, LLC*,
  2020 WL 7624620 (Del. Super. Ct. Dec. 21, 2020) .........................................15

*E.M. Diagnostic Sys., Inc. v. Loc. 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
  812 F.2d 91 (3d Cir. 1987) .............................................................................17

*Fin Assocs. LP v. Hudson Specialty Ins. Co.*,
  741 F. App'x 85 (3d Cir. 2018)........................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)...............................................................................13, 14

*Grasso v. First USA Bank*,
  713 A.2d 304 (Del. 1998) ...............................................................................15

*GTSI Corp. v. Eyak Tech., LLC*,
  10 A.3d 1116 (Del. Ch. 2010) .........................................................................11

*Hagenbaugh v. Nissan N. Am.*,
  2023 WL 361786 (M.D. Pa. Jan. 23, 2023)......................................................13

*HealthplanCRM, LLC v. AvMed, Inc.*,
  458 F. Supp. 3d 308 (W.D. Pa. 2020)..........................................................9, 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)......................................................................................10

*Hovanec v. Miller*,
  No. SA-17-CV-766-XR, 2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) ..........17

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
  938 F.3d 515 (3d Cir. 2019) ...........................................................................12

*Jaludi v. Citigroup*,
  933 F.3d 246 (3d Cir. 2019) ...........................................................................14

*Johnston v. Tally Ho, Inc.*,
  303 A.2d 677 (Del. Super. Ct. 1973)...............................................................16

iii

## TABLE OF AUTHORITIES

**Page**

*Julian v. Julian*,
  2009 WL 2937121 (Del. Ch. Sept. 9, 2009)...........................................................9

*Kilberg v. Discover Fin. Servs.*,
  2017 WL 3528005 (D.N.J. Aug. 16, 2017) .................................................14, 15

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)...................................................................................12

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.*,
  48 F.3d 742 (3d Cir. 1995) ..............................................................................6

*Liptak v. Accelerated Inventory Mgmt.*,
  LLC, No. 2:20-CV-967, 2021 WL 650514 (W.D. Pa. Feb. 19, 2021)...............15

*Lloyd v. HOVENSA, LLC*,
  369 F.3d 263 (3d Cir. 2004) ...........................................................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).....................................................................................13, 18

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2012) ........................................................................19

*Newell Rubbermaid Inc. v. Storm*, No. 9398–VCN, 2014 WL 1266827 (Del.
  Ch. Mar. 27, 2014)..........................................................................................15

*Pleasant v. Dollar Gen. Corp.*,
  2015 WL 12811236 (C.D. Cal. Feb. 18, 2015) ...............................................20

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
  673 F.3d 221 (3d Cir. 2012) ...........................................................................19

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)..........................................................................................10

*Richardson v. Coverall N. Am., Inc.*,
  811 F. App'x 100 (3d Cir. 2020), *cert. denied*, 141 U.S. 1685 (2021) ........11, 12

*SBC Interactive Inc. v. Corp. Media Partners*,
  714 A.2d 758 (Del. 1998) .................................................................................9

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005) ...........................................................................13

# TABLE OF AUTHORITIES

**Page**

*United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*,
  522 F.3d 324 (3d Cir. 2008) ...............................................................17

*Zeleny v. Thompson Homes at Centreville, Inc.*,
  2006 WL 2382829 (Del. Super. July 10, 2006)...................................16

## STATUTES

9 U.S.C. §§ 1, *et seq.*.............................................................................2

9 U.S.C. § 2 ......................................................................7, 8, 12, 13

Delaware Uniform Arbitration Act, 10 Del. C. § 5710 et seq. ................8

Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*....................................2

Pennsylvania's Wiretapping and Electronic Surveillance Control Act....................2

## RULES

Fed. R. Civ. P. 12(b)(1)...........................................................................6

Fed. R. Civ. P. 12(b)(6)...........................................................................7

Fed. R. Civ. P. 56 ...................................................................................7

Rule 7(a) of the AAA Rules....................................................................11

## I.   <u>INTRODUCTION</u>

Plaintiff brings a purported class action and alleges that Roman Health

Ventures Inc. ("Roman" or "Ro") violated federal and Pennsylvania wiretap

statutes by the "unlawful wiretapping of Plaintiff's communications without

consent or notice" through "intercepting, capturing, and observing its customers'

individual online activities."  (*See* Docket No. 1 ("Complaint" or "Compl."), ¶¶ 1,

9.)  As an initial matter, Plaintiff's relationship and dispute with Roman is subject

to Roman's Terms and Conditions of Use ("Terms"), agreed upon by the Parties

when Plaintiff registered to use and then used Roman's services.[1]  By doing so,

Plaintiff expressly agreed to arbitrate any dispute with Roman over the website or

their Services, he expressly waived his right to a trial by jury and the right to

participate in a class action, and he agreed to designate these waivers, including

arbitrability, to the arbitrator pursuant to the rules of the American Arbitration

Association ("AAA Rules").  Accordingly, Roman respectfully moves to compel

individual arbitration and to stay this litigation pending the outcome of arbitration.[2]

---

[1]    *See generally* Declaration of Ira Patnaik ("Patnaik Decl.") and Exhibits ("Ex.") A through D attached thereto.  (Docket No. 14-1; filed Apr. 18, 2023.)

[2]    The Southern District of New York previously enforced a similar version of Roman Health's Terms.  *See Costa v. Roman Health Ventures, Inc.,* 7:21-cv-05180-PMH ECF. 16 (S.D.N.Y., Oct. 7, 2021) (granting Roman Health's motion to compel arbitration and dismissing the case because the arbitration clause and class action waiver were binding).

On December 2, 2022, Plaintiff Gavin Siegfried ("Plaintiff") created a member account on Roman's website, Ro.co, and agreed to Roman's Terms. The Terms contain a clear and conspicuous mandatory individual arbitration clause related to Plaintiff's claims here, which provides that "every dispute arising in connection with these Terms of Use, the Services, or communications from [Roman]" will be resolved through binding arbitration under the AAA Rules -- *i.e.*, not litigated in this Court or any other. The Terms also contain a clear and conspicuous waiver of the right to "A TRIAL BY JURY" and the right "TO PARTICIPATE IN A CLASS ACTION."

Despite this valid and enforceable arbitration agreement, Plaintiff alleges in this Court violations of the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq*. (the "FWA") and Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") based solely on his alleged access and use of the Ro.co website. (*See generally* Compl.) Plaintiff brings this prohibited complaint on behalf of a purported class, which the Terms also prohibit. (*See generally id*.)

The Federal Arbitration Act (9 U.S.C. §§ 1, *et seq*., the "FAA") creates a strong presumption in favor of enforcing arbitration clauses, including clauses like we have here delegating authority to an arbitrator to determine threshold arbitrability issues. Consistent with that presumption, courts in the Third Circuit

2

consistently have enforced "clickwrap" arbitration agreements like the one to which Plaintiff has agreed.

Accordingly, the Court should grant this Motion, enforce the Parties' agreement set forth in the Terms, enter an order compelling Plaintiff to submit to individual arbitration, and stay this litigation pending the outcome of arbitration.

## II.   <u>FACTUAL BACKGROUND</u>

Among its services, Roman provides a nationwide online telehealth platform, available at *www.ro.co* and on related Roman websites and subdomains, allowing members to remotely interact with and receive medical services from a licensed healthcare provider (hereinafter, the "Platform"). (*See* Patnaik Decl. ¶ 4.)

To use the Platform,[3] a member can visit one of the Ro's websites and click a button to "start" an online telehealth "visit." (*Id.* ¶ 7 & Ex. A.)  After clicking "start", the individual ultimately is presented with a registration page for the Platform, where they will provide their name, email address, and a desired password. (*Id.* ¶¶ 8–9 & Ex. B.)  Immediately ***above*** the "Next" button on the sign-up page, which ultimately registers their account on the Platform once

---

[3]   The Platform sign up process described, and the Terms cited, below are as of December 2, 2022, when Plaintiff signed up for his account.  While the terms may vary somewhat today, they are fundamentally the same as they were in December 2022 (including with regard to individual arbitration), as in the signup process. (*See* Patnaik Decl. ¶¶ 9, 13.)

pressed, the consumer will see an empty checkbox and, to the immediate right of that box, easily-readable and conspicuous text: "I agree to <u>terms</u> and <u>privacy policy</u> and consent to <u>telehealth</u>." (*Id*.)  The underlined words represent hyperlinks to additional disclosures. (*Id*.)  Importantly, the box is <u>not</u> pre-checked and the consumer cannot register an account or proceed without checking the box and pressing the button. (*Id*.[4])  Clicking the "terms" hyperlink takes the individual to the Terms containing, among other things, an arbitration provision (hereinafter, "Arbitration Agreement") stating, in part:

### 16. Governing Law; Dispute Resolution; Arbitration; Venue; Severability

IMPORTANT NOTE: PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU AND RO TO RESOLVE ALL DISPUTES BETWEEN US THROUGH BINDING INDIVIDUAL ARBITRATION AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM RO. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS OF USE, YOU AND RO ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION.

**Governing Law.** These Terms of Use and your use of the Services shall be governed by the laws of the State of Delaware, without giving effect to the principles of conflict of laws. Subject to the requirement to arbitrate set forth in this Section 16, exclusive jurisdiction for all disputes that do not require arbitration will be the state and federal courts located in New York, New York, and you consent to the jurisdiction of those courts.

---

[4]     This is true today even if the consumer presses the "Continue with Google" button, which only auto-populates the name, email, and password – *i.e.,* they cannot proceed without checking the box. (*Id.* ¶ 9.)

4

**Binding Arbitration, Generally.** Except as described in the "**Exceptions**" section below, you and Ro agree that every dispute arising in connection with these Terms of Use, the Services, or communications from us will be resolved through binding arbitration. Arbitration uses a neutral arbitrator instead of a judge or jury, is less formal than a court proceeding, may allow for more limited discovery than in court, and is subject to very limited review by courts. This agreement to arbitrate disputes includes all claims whether based in contract, tort, statute, regulation, ordinance, fraud, misrepresentation, common law, constitutional provision, respondeat superior, agency or any other legal or equitable theory, regardless of whether a claim arises after the termination of these Terms of Use, and regardless of whether a claim arises before or after the effective date of these Terms of Use. Any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement will be resolved by the arbitrator.

(*Id.* ¶ 9 & Ex. C at p. 17–18.)

**No Class Actions.** YOU AND RO AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and Ro agree otherwise in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

**Arbitrator.** This arbitration agreement, and any arbitration between us, is subject to the Federal Arbitration Act and will be administered by the American Arbitration Association ("**AAA**") under its Consumer Arbitration Rules (collectively, "**AAA Rules**") as modified by these Terms of Use. The AAA Rules and filing forms are available online at www.adr.org, by calling the AAA at +1-800-778-7879, or by contacting Ro.

The Terms further state, at the outset:

PLEASE READ THESE TERMS OF USE CAREFULLY BECAUSE THEY SET FORTH THE IMPORTANT TERMS YOU WILL NEED TO KNOW ABOUT THE SERVICES.

YOU UNDERSTAND THAT BY ACCESSING OR USING THE SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO BE LEGALLY BOUND BY AND COMPLY WITH THESE TERMS OF USE. IF YOU DO NOT OR CANNOT AGREE WITH ANY PART OF THESE TERMS OF USE, YOU MAY NOT USE THE SERVICES.

(*Id.*, Ex. C at p. 3.)

5

These Terms also are located on the parent domain of the *ro.co* website (and
other sub-webpages).  (*Id*. ¶ 9.)

Roman's records reflect Plaintiff voluntarily registered a Platform account
on December 2, 2022 via Roman's website *start.ro.co*.  (*Id*. ¶ 12 & Ex. D.)  To do
so, he completed <u>all</u> of the registration steps above, including affirmatively
agreeing to the Terms by checking the blank box and clicking "next"; thus
agreeing to "resolve all disputes" through "binding individual arbitration" and
waiving the right to trial by jury and to participate in a class action.  (*Id*. ¶¶ 12–13.)
The same would be true for any putative class members who registered for a
Platform account.  (*Id*. ¶ 13.)

## III.   <u>LEGAL STANDARD</u>

"Federal courts have an ever-present obligation to satisfy themselves of their
subject matter jurisdiction and to decide the issue sua sponte." *Liberty Mut. Ins.
Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995).  Here, the Court
lacks subject matter jurisdiction over the dispute because the parties have agreed to
submit the dispute to binding arbitration, thus dismissal under Fed. R. Civ. P.
12(b)(1) is appropriate.  *Dimattei v. Diskin Motors, Inc.*, No. CV 16-5183, 2017
WL 1283943, at *1 (E.D. Pa. Apr. 6, 2017) (granting motion to dismiss for lack of

subject matter jurisdiction under 12(b)(1) because of a valid and binding arbitration agreement.")[5]

## IV.   <u>ARGUMENT</u>

The FAA compels Plaintiff to arbitrate his claim on an individual basis. Plaintiff voluntarily agreed to Roman's Terms when he signed up for an account online and when he used the Services subject to the Terms (as set forth therein), and, in doing so, agreed to submit "any dispute" to ***mandatory*** individual binding arbitration.  While Plaintiff may contend (albeit incorrectly) that the Arbitration Agreement is not enforceable and/or that his FWA and WESCA claims are beyond its scope, those issues have without question been delegated to the arbitrator -- not this Court -- to decide.  Even if this Court reaches the question of arbitrability (which it should not), the answer strongly favors Roman.

---

[5]     Alternatively, district courts can apply either a motion to dismiss standard under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment standard under Fed. R. Civ. P. 56, depending on whether the allegations and documents relied on in the complaint provide sufficient information to resolve the motion to compel arbitration.  *Delaware River Waterfront Corp. v. Wellspring Software, Inc.*, 2022 WL 17869139, at *6 (E.D. Pa. Dec. 22, 2022).  Where, as here, the complaint makes no reference to an arbitration agreement (although Complaint's allegations are sufficient to warrant finding that a binding agreement to arbitrate was made), the Rule 56 standard may be appropriate.  *Id.*

A.   <u>**The FAA Applies to the Arbitration Agreement**</u>.

The FAA applies to any transaction ***directly or indirectly*** affecting interstate commerce.  *See* 9 U.S.C. § 2 (arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract…").[6]

Here, the FAA unquestionably applies because the Parties' arbitration agreement is in a "contract evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2.  Plaintiff is located in Pennsylvania, while Roman is located in New York.  (*See* Compl. ¶¶ 4, 5.)  Further, Roman markets and sells its services and products nationwide and provided the complained of services here through interstate commerce.  (*See* Patnaik Decl. ¶ 4.)  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003); *see also Allied-Bruce Terminix*, 513 U.S. at 282 (the transaction involved interstate commerce where the party

---

[6]     *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016) (citing approvingly *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," and, as such, courts are required to "rigorously enforce agreements to arbitrate . . . .").)

attempting to enforce the arbitration provision was a "multi-state firm" that shipped products from out of state).[7]

### B. Any Dispute Regarding Arbitrability is Delegated to the Arbitrator.

The Parties agreed that the arbitrator -- not the Court -- should decide the existence and scope of a valid arbitration agreement between the parties, because the Arbitration Agreement explicitly incorporates the AAA Rules, which reserve the question of arbitrability for the arbitrator.[8]  Further, the Arbitration Agreement

---

[7] Even if the Court were to find, for some reason, that the FAA does not apply, the Parties expressly agreed to be bound by Delaware law with respect to the Terms.  The Delaware Uniform Arbitration Act, 10 Del. C. § 5710 et seq. ("DUAA"), is substantially similar to the FAA.  *See, e.g., 3850 & 3860 Colonial Blvd., LLC v. Griffin,* No. CV 9575-VCN, 2015 WL 894928, at *4 n.41 (Del. Ch. Feb. 26, 2015) (distinctions between Delaware law and FAA "not material" to order compelling arbitration); *Julian v. Julian,* No. CIV. A. 4137-VCP, 2009 WL 2937121, at *3 n.18 (Del. Ch. Sept. 9, 2009) (analyzing "relevant decisions of the Delaware courts, whether they arose in the context of the DUAA or the FAA"); *see also SBC Interactive Inc. v. Corp. Media Partners,* 714 A.2d 758, 761 (Del. 1998) (discussing Delaware's strong public policy in favor of arbitration).  The Arbitration Agreement includes a Delaware choice-of-law clause and, thus, all the same rules apply.

[8] Even under the stricter standard articulated by the Western District of Pennsylvania (which is not binding here), the question of arbitrability should be delegated to the arbitrator.  *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 321–326 (W.D. Pa. 2020).  Here, as in *HealthplanCRM*, (1) the language of the Arbitration Agreement is broad; (2) the Arbitration Agreement is clear in its election of the "Consumer Arbitration Rules" of AAA; (3) while the Arbitration Agreement does not use the word "exclusively," the language is clear that "every dispute arising in connection with these Terms of Use, the Services, or

expressly states that "Any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement will be resolved by the arbitrator." (Patnaik Decl. ¶ 13.)

Federal law expressly permits the Parties' ability to arbitrate these threshold arguments over arbitrability -- *i.e.*, whether the arbitration agreement is valid, and whether the scope of the agreement covers the claims at issue. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[p]arties can agree to arbitrate 'gateway' questions of 'arbitrability', such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and that a court must enforce parties' "agreement to arbitrate threshold issues…"). Further, "unless [a plaintiff] challenge[s] [a] delegation provision specifically, [a court] must treat it as valid . . . and ***must enforce it*** . . . leaving any challenge to the validity of the [agreement to arbitrate] as a whole for the arbitrator." *Id.* at 72 (emphasis added). Thus, if the parties "clear[ly] and unmistakab[ly]" delegate these questions to the arbitrator, *id*. at 79, "a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v.*

---

communications from us will be resolved through binding arbitration;" and (4) the limited exceptions to arbitration should not be construed as creating ambiguity. *Id*. The fifth element discussed in *HealthplanCRM* regarding the sophistication of the party seeking to avoid arbitration should also be resolved in Roman's favor, as Plaintiff was required to -- and did -- specifically opt into the Terms. *Id.* at 326.

*Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  *See also HealthplanCRM,*

*LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 313–14 (W.D. Pa. 2020) (compelling

arbitration found in browsewrap agreement and finding that "[w]hile the Court

rejects the notion that incorporation of AAA rules always operates as a 'clear and

unmistakable' delegation of that authority, the explicit language of the parties'

contract leaves no room for ambiguity here.).[9]

Where (as here) the Parties explicitly incorporate the AAA Rules reserving

the question of arbitrability for the arbitrator, such incorporation "constitutes 'clear

and unmistakable' evidence of the parties' intent [to delegate arbitrability]."

*Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020), *cert.*

*denied*, 141 U.S. 1685 (2021).  In *Richardson*, like here, the relevant agreement

provided that "'all controversies, disputes or claims between [defendant] ... and

[plaintiff] ... shall be submitted promptly for arbitration' and that '[a]rbitration

shall be subject to ... the then current Rules of the American Arbitration

Association for Commercial Arbitration.'"  *Id*. at 103.  The court found without

question that the AAA Rules governed the parties' dispute, and that "Rule 7(a) of

the AAA Rules provides that '[t]he arbitrator shall have the power to rule on his or

---

[9]     Delaware law is in accord on this point.  *See, e.g., GTSI Corp. v. Eyak Tech.,*
*LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010) (where "a contract clearly and
unmistakably provides that an arbitrator will decide substantive arbitrability, then
the contract controls").

her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Id*. Thus, the court found that the arbitration agreement was as "clear and unmistakable as language can get." *Id*. (internal quotations omitted).

The language in *Richardson* is nearly identical to the Parties' Arbitration Agreement here: the Parties expressly agreed to individual arbitration conducted under the AAA Rules. (*See* Patnaik Decl. ¶ 13 & Ex. C. at p. 18–19.) Because the Parties "clearly and unmistakably" agreed to delegate arbitrability issues to the arbitrator, this Court's inquiry is complete, and arbitration should be compelled.

### C.   <u>The Arbitration Agreement Should Be Enforced Under the FAA</u>.

Should the Court reach the question of arbitrability, the Arbitration Agreement constitutes a valid and enforceable contract mandating Plaintiff to arbitrate his individual dispute. As the Supreme Court noted, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)(internal citation omitted). Again, Section 2 of the FAA provides that arbitration provisions in "a contract evidencing a transaction involving commerce … ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added).

12

Deciding a motion to compel arbitration requires the Court to resolve two questions:  (1) "'whether the parties have a valid arbitration agreement at all' (*i.e.*, its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (*i.e.*, its scope)."  *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416–17 (2019)).  In short, if a court finds a valid agreement to arbitrate exists and that it encompasses the dispute, the FAA **requires** the court to refer the matter to arbitration.[10]  *Dean Witter,* 470 U.S. at 218.  Once a court determines that a claim is subject to arbitration, it lacks authority to address the merits of that claim.  *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967); *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649–50 (1986).  Here, Roman demonstrates that the answers to both questions require the Court to compel arbitration.

---

[10]    The FAA strongly favors enforcement of arbitration agreements and places arbitration agreements on equal footing with all other contracts.  *See Cardegna*, 546 U.S. at 443– 44 (citing 9 U.S.C. § 2).  Indeed, the FAA promotes a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Hagenbaugh v. Nissan N. Am.*, No. CV 3:20-1838, 2023 WL 361786, at *4 (M.D. Pa. Jan. 23, 2023) ("The FAA 'establishes a strong federal policy in favor of compelling arbitration over litigation.'").  Accordingly, given the presumption in favor of arbitrability, "[a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

### 1.   <u>The Arbitration Agreement is Valid and Enforceable</u>.

While the FAA exclusively governs the enforceability of the agreement,

state law governs the determination of whether a valid agreement to arbitrate

exists.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When

deciding whether the parties agreed to arbitrate a certain matter (including

arbitrability), courts generally … should apply ordinary state-law principles that

govern the formation of contracts."); *Jaludi v. Citigroup*, 933 F.3d 246, 254–55 (3d

Cir. 2019).  Courts in the Third Circuit generally honor choice-of-law clauses to

determine which state's law governs the validity and scope of an arbitration

agreement.  *See, e.g., Ario v. Underwriting Members of Syndicate 53 at Lloyds for*

*1998 Year of Acct.*, 618 F.3d 277, 288 (3d Cir. 2010) ( "[T]he FAA permits parties

to specify by contract the rules under which arbitration will be conducted"); *Fin*

*Assocs. LP v. Hudson Specialty Ins. Co.*, 741 F. App'x 85 (3d Cir. 2018) (enforcing

choice of law provision and granting motion to compel arbitration).

The Arbitration Agreement here is subject to a Delaware choice-of-law

clause, which is where Plaintiff alleges Roman is incorporated.  (*See* Patnaik Decl.,

Ex. C at p. 17.  *See also* Compl. ¶ 5.)  Under Delaware law, "[t]hree elements are

necessary to prove the existence of an enforceable contract: 1) the intent of the

parties to be bound by it, 2) sufficiently definite terms and 3) consideration."

*Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006).  *See also Kilberg v.*

*Discover Fin. Servs.*, No. CV165168MASLHG, 2017 WL 3528005, at \*3–5

(D.N.J. Aug. 16, 2017) (applying Delaware choice-of-law clause in TCPA case

and granting motion to compel arbitration).  As shown below, the Arbitration

Agreement contained in the Terms easily satisfies each of these requirements:

**First**, Plaintiff affirmatively acknowledged his intent -- after ample

opportunity for review -- to be bound by the Terms, including the conspicuous

Arbitration Agreement contained therein, by checking a box immediately to the

left of the underlined "terms" hyperlink and then clicking the "Next" on the

registration page.  (*See* Patnaik Decl. ¶¶ 7–13 & Exs. A, B, D.)  Delaware courts

routinely enforce such online agreements.  *See, e.g., Doe v. Massage Envy*

*Franchising, LLC*, No. CV S20C-05-005RFS, 2020 WL 7624620, at \*2–3 (Del.

Super. Ct. Dec. 21, 2020) (compelling arbitration, citing *Newell Rubbermaid Inc.*

*v. Storm*, No. 9398–VCN, 2014 WL 1266827, at \*6–7 (Del. Ch. Mar. 27, 2014)

(holding that plaintiff manifested assent by clicking "Accept" for online contract));

*see also Cabela's LLC v. Wellman*, No. CV 2018-0607-TMR, 2018 WL 5309954,

at \*7, n.86 (Del. Ch. Oct. 26, 2018) ("Delaware law allows digital acceptance of

the terms of an agreement."); *Kilberg,* 2017 WL 3528005, at \*4 ("'[I]ntent to

accept is presumed absent contrary words or conduct.'") (quoting *Grasso v. First USA Bank,* 713 A.2d 304, 308 (Del. 1998)).[11]  This Court should do so here.

**Second**, the Terms (and thus the Arbitration Agreement therein) are sufficiently definite.  Indeed, the Terms plainly state: "PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU AND [ROMAN] TO RESOLVE ALL DISPUTES BETWEEN US THROUGH BINDING INDIVIDUAL ARBITRATION AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM [ROMAN]" and "every dispute arising in connection with these Terms of Use, the Services, or communications from us will be resolved through binding arbitration."  (Patnaik Decl., Ex. C at p. 17–18.)  Moreover, by checking the box on the signup page before he pressed the "Next" button, it was

---

[11]     Similar "clickwrap" agreements have been enforced by courts in the Third Circuit (including in this District) and elsewhere.  *Cf. Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016) ("[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket" and "[w]hether or not the consumer bothers to look is irrelevant") (internal citations omitted); *Liptak v. Accelerated Inventory Mgmt.*, LLC, No. 2:20-CV-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021) ("[C]lickwrap agreements are generally enforced by the courts and because of the strong federal policy favoring arbitration, the arbitration provision in the clickwrap agreement shall be enforced."); *Dobbs v. Health IQ Ins. Servs., Inc.*, No. CV 21-5276, 2022 WL 2974713, at *1 (E.D. Pa. July 27, 2022) (compelling arbitration under clickwrap agreement where terms of use, including arbitration agreement, were hyperlinked and plaintiff manifested assent by clicking "submit").

clear that Plaintiff was "agree[ing]" to the consciously-hyperlinked and underlined Terms.  (*Id.*, ¶¶ 8–9, 12 & Exs. B and D.)  In short, there is no ambiguity here.  *See also Johnston v. Tally Ho, Inc.*, 303 A.2d 677, 679 (Del. Super. Ct. 1973) (contracts are to be interpreted from the plain meaning of the terms found within the contract).

**Third**, the Arbitration Agreement is supported by valid consideration -- *i.e.*, the Parties' mutual promises to arbitrate disputes.  *See, e.g., Zeleny v. Thompson Homes at Centreville, Inc.*, No. CIV.A. 05C-12-224SCD, 2006 WL 2382829, at *3 (Del. Super. Ct. July 10, 2006) (compelling arbitration where, "[i]n consideration for this [contractual warranty] coverage, plaintiffs agreed to binding arbitration as an exclusive remedy for any and all disputes").  Thus, a valid agreement to arbitrate exists here.

### 2.    Plaintiff's FWA and WESCA Claims Are Within the Scope of the Arbitration Agreement.

To determine whether Plaintiff's FWA and WESCA claims fall within the scope of the Arbitration Agreement, the Court must "determine whether the arbitration clause is broad or narrow." *Commc'ns Workers of Am., AFL-CIO, Dist. 2-13 v. Verizon Pennsylvania, LLC*, No. CV 17-1869, 2017 WL 3485879, at *4 (E.D. Pa. Aug. 15, 2017).  If it is broad, there is a presumption of arbitrability. *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324,

332 (3d Cir. 2008).  The Third Circuit has found arbitration provisions to be broad

where they apply to "any dispute."  *E.M. Diagnostic Sys., Inc. v. Loc. 169, Int'l*

*Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91,

92–95 (3d Cir. 1987).  Here, the Arbitration Agreement's applicability to "every

dispute" should likewise be construed as broad.

The Arbitration Agreement at issue indisputably covers Plaintiff's FWA and

WESCA claims.[12]  As noted above, the arbitration provision in Roman's Terms

broadly provides that "every dispute arising in connection with these Terms of

Use, the Services, or communications from us will be resolved through binding

arbitration."  (Patnaik Decl., Ex. C at 18.)  The Terms also cover the Plaintiff's

statutory basis for his claims here:  the "agreement to arbitrate disputes includes all

claims whether based in contract, tort, statute, regulation, ordinance, fraud,

misrepresentation, common law, constitutional provision, respondeat superior,

agency or any other legal or equitable theory, regardless of whether a claim arises

after the termination of these Terms of Use, and regardless of whether a claim

arises before or after the effective date of these Terms of Use . . . ."  (*Id.*)  The

Terms also state from the outset that "IF YOU DO NOT OR CANNOT AGREE

---

[12]     While there is limited case law providing substantive analysis of the
arbitrability of claims under the FWA specifically, there is federal precedent
compelling arbitration of those claims.  *See Hovanec v. Miller*, No. SA-17-CV-
766-XR, 2018 WL 1221486, at *13 (W.D. Tex. Mar. 7, 2018).

18

WITH ANY PART OF THESE TERMS OF USE, YOU MAY NOT USE THE SERVICES." (*Id.* at 3.)  The term "Services" is defined to include "Websites, Apps, and other services provided by Ro." (*Id.* at 2.)

Because Plaintiff agreed that his use of the Services was governed by the Terms, and because the Services covers the use of the "Websites" and "Apps," any claims Plaintiff has arising out of his use of the Website or Apps are clearly within the scope of the broad arbitration provision in the Terms.  And even if there was some ambiguity on this point here (and there is none), it is clear that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  Consequently, the Arbitration Agreement is enforceable and it covers Plaintiff's FWA and WESCA claims against Roman.

### D.   <u>The Arbitration Should Proceed on an Individual Basis</u>.

Although Plaintiff seeks class treatment, the Arbitration Agreement provides, in all capital letters, that the parties must "RESOLVE ALL DISPUTES … THROUGH BINDING INDIVIDUAL ARBITRATION" and that "YOU AND RO ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION." (Patnaik Decl., Ex. C at 17.)  In this regard, it is well-settled that class action waivers in arbitration provisions are enforceable. *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814,

2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021) (granting motion to compel arbitration because plaintiff's assent to terms of use in clickwrap agreement included assent to class action waiver and finding that "class action waivers are enforceable under the FAA").  *See also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225–26 (9th Cir. 2012) ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable ….").  Consequently, the Court should compel individual arbitration.

## E.     **This Action Should Be Stayed in Favor of Arbitration**.

When granting a motion to compel arbitration, this Court may -- and indeed should -- stay the case in favor of arbitration.  *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 237 n.2 (3d Cir. 2012) ("a stay, rather than a dismissal, is the required course of action when compelling arbitration").  Indeed, "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).  Consequently, this Court should enter a stay here because the at-issue Arbitration Agreement clearly encompasses (and therefore bars) Plaintiff's two claims alleged in his Complaint.

This case also should be stayed because every putative class member would have agreed to substantially the same arbitration provision and class action waiver. (*See* Patnaik Decl. ¶ 13.)  Courts have stayed cases based on similar facts.  *See,*

20

*e.g.*, *Pleasant v. Dollar Gen. Corp.*, No. EDCV1402645JGBKKX, 2015 WL
12811236, at *3 (C.D. Cal. Feb. 18, 2015); *Carrera Chapple v. Ancestry.com
Operations Inc.*, No. 20CV1456-LAB (DEB), 2020 WL 5847552, at *1 (S.D. Cal.
Sept. 30, 2020).

## V.    <u>CONCLUSION</u>

For these reasons and for such reasons as may be presented to the Court
prior to its ruling, Defendant Roman Health Ventures Inc. respectfully requests that
the Court enter an order granting this Motion in its entirety and:  (1) compelling
Plaintiff to arbitrate all his claims in this matter on an individual basis; (2) staying

this action, in favor of arbitration; and (3) granting all other relief deemed just and proper.[13]

Dated:  May 2, 2023                    Respectfully Submitted,

By: */s/ Peter J. Adonizio, Jr.*          By: */s/ Scott T. Lashway*
Julie E. Ravis (Id. No. 203101)        Scott T. Lashway (admitted *pro hac vice*)
Peter J. Adonizio, Jr. (Id. No. 325990)  Mara A. O'Malley (admitted *pro hac vice*)
STEVENS & LEE, P.C.                     MANATT, PHELPS & PHILLIPS, LLP
111 North Sixth Street, P.O. Box 679   177 Huntington Avenue, Suite 2500
Reading, PA 19603-0679                 Boston, Massachusetts 02115
Tel: (610) 478-2077                    Tel: (617) 646-1400
Fax: (610) 371-7747                    *slashway@manatt.com*
*julie.ravis@stevenslee.com*           *momalley@manatt.com*
*peter.adonizio@stevenslee.com*

                                       Attorneys for Defendant Roman
                                       Health Ventures Inc.

---

[13]     Should the Court deny this Motion, Roman respectfully requests leave to file a dispositive motion within twenty-one (21) days of the Court's denial order, or at such future date as the Court deems appropriate.

22

## CERTIFICATION UNDER LOCAL RULE 7.8(b)(2)

I, Peter J. Adonizio, Jr., hereby certify that the foregoing *Defendant Roman Health Ventures Inc.'s Brief In Support Of Its Motion To Compel Arbitration* complies with the word-count limit described in Local Rule 7.8(b)(2).  It contains 4,741 words.


Dated:  May 2, 2023                              */s/ Peter J. Adonizio, Jr.*
                                                  Peter J. Adonizio, Jr.

23